IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DGU GROUP INC,<br>   *Plaintiff,*<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>   *Defendants.* | CIVIL ACTION<br><br>NO. 24-5911 |

**Pappert, J.**                            April 30, 2025

### MEMORANDUM

  DGU Group Inc. sued more than sixty business entities, alleging they counterfeited and infringed DGU's registered FRONTWALK Mark. DGU now moves for entry of default judgment against those Defendants who failed to respond or otherwise participate in the litigation. The Court grants DGU's motion, enters default judgment and approves an award of $500,000 in statutory damages against each.

I

  Since August 2021, DGU has specialized in the design, manufacturing and sales of clothing and fashion products using its federally registered FRONTWALK Mark. (Compl. ¶¶ 15–19, ECF No. 1; Certificate of Registration, ECF No. 1-4.) DGU has spent more than $1.1 million in advertising and marketing for these products, garnered thousands of positive reviews and generated $12 million in sales. (Li Decl. in Supp. of Pl. *Ex Parte* App. for TRO, Prelim. Inj., and Order Restraining Def. Online Stores and Assets, ¶¶ 11–12, 14, ECF No. 6-3.)

Defendants started using similar versions of the FRONTWALK Mark without DGU's authorization. (Compl. ¶¶ 28, 40.) They used online platforms like Walmart.com to advertise, sell and ship products with FRONTWALK marks to customers across the United States—including in Pennsylvania. (Compl. ¶¶ 8, 13, 30.)

In November of 2024, DGU filed its complaint against the Defendants alleging trademark infringement and counterfeiting under 15 U.S.C. § 1114 (Count 1), unfair competition and false designation of origin under 14 U.S.C. § 1125(a) (Count 2), and trademark infringement (Count 3) and unfair competition (Count 4) under Pennsylvania common law. The Court granted DGU's motion for alternative service through email and website publication. (ECF No. 9.) None of the remaining Defendants answered or otherwise responded to DGU's complaint. *See* (Decl. of Bole Yuan in Supp. of Pl. Request for Entry of Default ¶¶ 6–8, ECF No. 18-2). The Clerk subsequently entered a default against the Defendants pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 19.)

II

Before the Court can enter default judgment, it must find that process was properly served. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985). DGU served all Defendants, who reside and operate in China, by email and website publication—consistent with the Court's orders authorizing alternative service under Federal Rule of Civil Procedure 4(f). *See* (Aff. of Serv., ECF No. 12).

2

III

A

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (quotation omitted).

This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over federal claims that relate to trademark and copyright infringement. The Court also has supplemental jurisdiction over DGU's remaining claims arising under common law or state law pursuant to 28 U.S.C. § 1367(a) because the claims arise from the same case or controversy as DGU's federal claims.

B

On a motion for default judgment, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *D'Onofrio*, 430 F. Supp. 2d at 439. Pennsylvania's long-arm statute is co-extensive with the Due Process Clause of the Fourteenth Amendment. *See* 42 Pa. Cons. Stat. Ann. § 5322(b). Accordingly, the Court's jurisdiction is proper so long as Defendants have "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: general and specific. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017). "A court

with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* However, specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Pennsylvania has specific personal jurisdiction over the Defendants. The "mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Instead, there "must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* Here, each of the Defendants has purposefully availed itself of the opportunity to conduct business with Pennsylvania residents by allowing Pennsylvania customers to view the products, add them to their online shopping cart, checkout and ship their products to Pennsylvania. *See* (Li Decl. ¶ 26.)

IV

The Court must determine whether "the unchallenged facts constitute a legitimate cause of action." *Serv. Emps. Int'l Union v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018) (quotation omitted). "A consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating

4

to the amount of damages, will be taken as true.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted).

A

Federal trademark infringement claims under 15 U.S.C. § 1114 and unfair competition claims under 15 U.S.C. § 1125(a)(1)(A) are analyzed by identical standards. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). And in Pennsylvania, common law trademark infringement and unfair competition claims are governed by the same standards as their federal counterparts. *R&B, Inc. v. Needa Parts Mfg., Inc.*, 418 F. Supp. 2d 684, 697 n.1 (E.D. Pa. 2005).

To establish a cause of action for an alleged Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark, (2) it owns the mark, and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000).

In *Interpace Corp. v. Lapp, Inc.*, the Third Circuit established a ten-factor analysis to determine whether the defendant's marks are likely to cause consumer confusion. 721 F.2d 460, 463 (3d Cir. 1983).[1]  However, when the trademark holder and

---

[1]  The *Lapp* factors are: "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of the consumers, whether because of the near-identity of the products, the similarity of function, or other factors; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market." *A&H Sportswear, Inc.*, 237 F.3d at 215.

the alleged infringer have competing goods or services, a court will rarely need to "look beyond the mark itself." *Lapp*, 721 F.2d at 462. The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *Opticians Ass'n of Am.*, 920 F.2d at 195 (quotation omitted).

Furthermore, "[n]ot all ten factors [of the *Lapp* test] are necessary to determine that there is a likelihood of confusion, and a likelihood can be found even if a majority of the factors do not show confusion." *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, No. 09-2857, 2011 WL 3679155, at *10 (E.D. Pa. Aug. 23, 2011) (citing *A&H Sportswear*, 237 F.3d at 216). The factors "are not to be 'mechanically tallied,' but are rather tools to guide a qualitative decision." *Id.* (quotation omitted).

### B

The first two elements of DGU's claims are met; the FRONTWALK Mark is federally registered, *see* (Certificate of Registration, ECF No. 1-4), and DGU owns the mark, *see* (Li Decl. at ¶¶ 6, 19, 28). Indeed, registration is "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark . . . in connection with the goods or services specified in the certificate." *B&B Hardware, Inc. v. Hargis Indus*, 575 U.S. 138, 142 (2015) (quotation omitted).

The Court need not conduct a detailed analysis under each *Lapp* factor because DGU's complaint alleges a significant likelihood of confusion. A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d

Cir. 1992) (quotation omitted).  Defendants are in direct competition with DGU by manufacturing, promoting and selling clothing and other fashion items.  (Compl. ¶ 67.) Defendants sell these products with identical versions of the FRONTWALK Mark through online marketplaces like Walmart.com—all without DGU's authorization. (Compl. ¶¶ 30, 40.)

V

Before entering a default judgment, the Court must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

First, denying the motion will prejudice DGU.  A plaintiff "will be prejudiced absent a default judgment when a defendant fails to respond to the plaintiff's claims because the 'plaintiff will be left with no other means to vindicate his or her claims.'" *United States v. Tran*, No. 21-730, 2022 WL 159734, at *2 (E.D. Pa. Jan 18, 2022) (quotation omitted).  DGU filed suit nearly six months ago and, absent default judgment, remains unable to obtain relief.

The second factor—whether the Defendants have a litigable defense—also favors entering a default judgment because the Defendants never answered, responded or otherwise participated in the litigation.  The Court may presume, then, that Defendants have no meritorious defense.  *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271–72 (E.D. Pa. 2014).

Finally, the third factor—whether the Defendants' delay is due to their own culpable conduct—is at least a neutral factor, and at most a factor favoring entry of

default judgment. Culpable conduct relates only to "actions taken willfully or in bad faith." *Mike Rosen & Assocs., P.C. v. Omega Builders*, 940 F. Supp. 115, 118 (E.D. Pa. 1996) (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983)). Some courts have held the third factor to be neutral where the court "has no information related to the motivations of [Defendants] in failing to appear and defend." *Great Am. E & S Ins. Co. v. John P. Cawley, Ltd.*, 866 F. Supp. 2d 437, 442 (E.D. Pa. 2011). Other courts have found that "failure or refusal to engage in the litigation process and to offer [a] reason for this failure or refusal may qualify as culpable conduct . . . —indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *Joe Hand Promotions*, 3 F. Supp. 3d at 271 (cleaned up) (quotation omitted). The Court approved DGU's alternative method of service, and Defendants have filed to appear or otherwise defend. Whether this factor is neutral or weighs in favor of default judgment, overall analysis of the three factors favors entry of default judgment.

VI

A

After granting the motion for default judgment, the Court must calculate the appropriate damages. *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015). While the factual allegations of the complaint are accepted as true, the amount of damages must still be proven. *Comdyne I, Inc.*, 908 F.2d at 1149. "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."

8

*Allstate Ins. Co. v. Nw. Med.*, No. 23-2480, 2023 WL 7185566, *3 (E.D. Pa. Oct. 31, 2023) (quotation omitted). It is within the Court's discretion "to decide whether further evidence or a hearing is necessary to ascertain if the evidence contained in affidavits and documents in the record is sufficient to establish damages." *Id.* (citing Fed. R. Civ. P. 55(b)).

1

DGU requests that the Court award $500,000 in statutory damages against each Defendant in violation of the Lanham Act. The Lanham Act provides for statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods," with an increased limit of $2,000,000 for willful infringement—which can be inferred in this case by Defendants' defaulting. 15 U.S.C. § 1117(c); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the [Defendants'] infringement is deemed willful . . . ."). Generally, "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringer's control and is not disclosed." *Delta Air Lines, Inc. v. Fly Tech, LLC*, No. 16-2599, 2018 WL 11414906, *1 (D.N.J. Nov. 30, 2018) (quoting *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (collecting cases)).

Section 1117(c)(2) does not provide guidelines for courts determining an appropriate award, but rather leaves it to each court's discretion to award an amount it "considers just." 15 U.S.C. § 1117(c)(2). Absent "clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." *Louis Vuitton Malletier*

*& Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583–84 (E.D. Pa. 2002). These factors are: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records; and (7) the potential for discouraging the defendant." *Delta Air Lines, Inc.*, 2018 WL 11414906 at *2 (alteration in original) (quotation omitted).

2

DGU states that this amount will serve the goals of compensating DGU for illegal use of a mark associated with $12 million in sales and thousands of positive reviews, punishing the Defendants' willful infringement, and deterring the Defendants and counterfeiters generally. (Li. Decl. ¶¶ 12–14; Pl. Mem. in Supp. of Mot. for Def. Judgment at 15–16, ECF No. 20-1). And although the Court cannot determine the extent of DGU's loss or Defendants' gains from the counterfeit sales, DGU notes "online counterfeiters' wide market exposure . . . warrants higher damages" and cites comparable trademark-infringement cases with similar awards. (Pl. Mem. in Supp. of Mot. for Def. Judgment at 17–18.) The Court agrees that DGU's suggested statutory damages figure is reasonable, and awards $500,000 in damages from each Defendant.[2]

---

[2] Because the Court has already found that Defendants can readily conceal their identities and transfer assets out of the country, it is appropriate to enter an order directing Walmart.com and its related companies to transfer Defendants' assets currently held by Walmart.com as partial satisfaction of the judgment awarded. Such an order is necessary for DGU to collect the judgment and is within the Court's inherent powers to issue remedies ancillary to its authority to provide final relief. *See* 15 U.S.C. § 1116(a); Fed. R. Civ. P. 64.

B

DGU also seeks a permanent injunction against each Defendant, barring future infringing conduct. "A permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement." *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996). A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

First, DGU has suffered irreparable harm due to the finding that Defendants' uses of the FRONTWALK Mark create a likelihood of confusion. *See* Section IV.B, *supra*. Second, damages would be inadequate to compensate for the consumer confusion that may arise if Defendants were to continue using DGU's FRONTWALK Mark. Damages may not be sufficient to deter future infringement, and the damages from any future infringement would be difficult to determine. Third, the balance of hardships supports granting a permanent injunction, since any injury Defendants would suffer is "discounted by the fact that [Defendants] brought that injury upon [themselves]." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Finally, the public interest in protecting registered trademarks supports granting a permanent injunction in this case. In a trademark case, the public interest "is most often a synonym for the right of the public

not to be deceived or confused." *Opticians Ass'n of Am.*, 920 F.2d at 197.  The public interest also includes the "recognition of property interests in trademarks." *Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.
